**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MILLICENT N. MORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 25 C 11703 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| NEWREZ LLC, a Delaware limited liability | ) | |
| company, d/b/a Shellpoint Mortgage Servicing; | ) | |
| and DIAZ ANSELMO & ASSOCIATES, LLC, | ) | |
| an Illinois limited liability company, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Despite her belief that she had entered into a valid loan modification agreement, Plaintiff

Millicent N. Morris finds herself facing the foreclosure of her property at 15314 Grant Street,

Dolton, Illinois (the "Property") in the Circuit Court of Cook County, Illinois (Case No.

2024CH10123) (the "Foreclosure"). Morris filed this lawsuit in response, alleging that NewRez

LLC, d/b/a Shellpoint Mortgage Servicing ("Shellpoint") and Diaz Anselmo & Associates, LLC

("DAA"), the law firm that filed the Foreclosure, made false and misleading statements in

connection with the servicing and collection of her mortgage loan. Morris brings claims for

violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*,

the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Illinois

Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*

Shellpoint and DAA move to dismiss or stay the case pursuant to Federal Rule of Civil

Procedure 12(b)(1) and the *Colorado River* doctrine, and Shellpoint also alternatively moves to

dismiss the RESPA claim for failure to state a claim under Rule 12(b)(6). The Court finds that

the *Colorado River* doctrine requires staying the case pending resolution of the parallel

Foreclosure in state court. As a result, the Court denies Shellpoint's motion regarding the sufficiency of the RESPA claim without prejudice to refiling once the Court lifts the stay.

## BACKGROUND[1]

Morris took out a mortgage secured by the Property (the "Mortgage") in 2003. In 2016, Specialized Loan Servicing ("SLS") took over the servicing of Morris' Mortgage. Morris and SLS entered into a permanent loan modification in late 2021 (the "2021 Loan Modification"). After Morris again encountered financial difficulties in 2023, she reached out to SLS for assistance. In February 2024, SLS sent her another loan modification agreement, which Morris signed and returned to SLS. But on March 5, 2024, SLS contacted Morris and informed her that the loan modification agreement included incorrect information, asking her to sign and return a corrected loan modification agreement by March 20, 2024. Morris entered this loan modification agreement (the "2024 Loan Modification") on March 11, 2024, with the agreement having an effective date of February 1, 2024. Morris then made payments to SLS on March 28, April 28, and May 22, 2024. For the May payment, SLS modified Morris' payment amount based apparently on the 2021 Loan Modification, not the 2024 Loan Modification.

On May 3, 2024, SLS sent Morris a notice of default and notice of intent to foreclose, indicating she had defaulted on her Mortgage by failing to make her November 1, 2023 payment and subsequent payments. The notice further indicated that she had to pay $9,104.55 by June 5,

---

[1] The Court takes the facts in the background section from Morris' complaint and the exhibits attached thereto and presumes them to be true for the purpose of resolving Shellpoint and DAA's motions to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). The Court "may also take judicial notice of matters of public record," *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1043–44 (7th Cir. 2019), including the court orders and records in the Foreclosure, *see Gen. Elec. Cap. Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997) (courts may take judicial notice of "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" (citation omitted)).

2024 to cure the default and that failure to cure the default could result in acceleration of the entire balance of the loan.

On May 1, 2024, Shellpoint's parent company acquired SLS and began transitioning all loan servicing from SLS to Shellpoint. On May 30, 2024, Shellpoint sent Morris a letter indicating it had reviewed her application for mortgage relief but found her ineligible for any loan modification programs. Although confused by this letter given that she had entered into the 2024 Loan Modification, she returned the included mortgage relief opt-in form to Shellpoint, indicating she wanted to keep her property and did not want to sell it. After SLS transferred the servicing of Morris' loan to Shellpoint on June 1, 2024, Shellpoint refused to honor the 2024 Loan Modification, considered the Mortgage delinquent at the time of transfer, and did not accept any further monthly payments from Morris. On June 17, 2024, Morris received a credit report notice indicating she was 120 days late on her Mortgage, but when she contacted Shellpoint, it had no information on her Mortgage. In July 2024, Morris submitted another loan modification application as instructed by Shellpoint employees. In October 2024, Shellpoint employees told her that her 2024 Loan Modification had been denied because she had not made her June payment and, alternatively, because her signature on the documents was not notarized.

On October 14, 2024, Shellpoint assigned the Mortgage to Federal Home Loan Mortgage Corporation as Trustee for Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2019-1 (the "Trustee"). On October 22, 2024, a Shellpoint employee told Morris she had to pay $17,254.67 by November 26, 2024 to bring her account current and that otherwise it would begin foreclosure proceedings. On November 13, 2024, DAA filed the Foreclosure against Morris in the Circuit Court of Cook County on behalf of the Trustee, Case No. 2024CH10123. The Foreclosure remains pending.

On September 26, 2025, Morris filed this federal lawsuit against Shellpoint and DAA, alleging violations of RESPA, the FDCPA, and ICFA.

## ANALYSIS

Shellpoint and DAA move to dismiss, or alternatively, to stay this case pursuant to the *Colorado River* doctrine pending resolution of the Foreclosure. "The *Colorado River* 'doctrine allows courts to conserve judicial resources by abstaining from accepting jurisdiction when there is a parallel proceeding elsewhere.'" *Baek v. Clausen*, 886 F.3d 652, 663 (7th Cir. 2018) (citation omitted). "The primary purpose of the *Colorado River* doctrine is to conserve both state and federal judicial resources and prevent inconsistent results." *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014). The Court has discretion to stay federal proceedings pending the resolution of a state court action. *Id.* The Court must first determine if the state and federal proceedings are parallel. *Baek*, 886 F.3d at 663 (citation omitted). "If the proceedings are parallel, the court must determine if abstention is proper by weighing ten non-exclusive factors." *Id.*

### I. Whether the Actions Are Parallel

Two cases are parallel when "substantially the same parties are litigating substantially the same issues simultaneously in two fora." *Id.* at 667 (citation omitted). The primary question for determining parallelism for purposes of *Colorado River* abstention is not whether the cases are "formally symmetrical, but whether there is a 'substantial likelihood'" that the state case "will dispose of all claims presented in the federal case." *AAR Int'l Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) (citation omitted). The two cases "need not be identical to be parallel, and the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel." *Baek*, 886 F.3d at 667 (citation omitted).

Where a plaintiff's federal lawsuit "relies significantly on the resolution of the primary legal issue under consideration" in the state court action, the cases are sufficiently parallel to support *Colorado River* abstention. *Charles v. Bank of Am., N.A.*, No. 11 CV 8217, 2012 WL 6093903, at *4 (N.D. Ill. Dec. 5, 2012).

Here, the parties are not identical because Shellpoint, as the servicer of the Mortgage, and DAA, as the law firm that filed the Foreclosure, are not parties to the Foreclosure. However, "the parallel nature of the actions cannot be destroyed by simply tacking on a few more defendants." *Clark v. Lacy*, 376 F.3d 682, 686–87 (7th Cir. 2004). Moreover, Shellpoint and DAA share similar litigation interests with the Trustee—demonstrating that Morris defaulted on the Mortgage. *See Freed*, 756 F.3d at 1019 ("One way that parties in separate actions are considered substantially the same under the *Colorado River* doctrine is when they have 'nearly identical' interests." (citation omitted)). Thus, although the Foreclosure and this case do not involve identical parties, they do involve "substantially the same parties," allowing the Court to find they are parallel. *Baek*, 886 F.3d at 667 (citation omitted); *see Nieves v. Bank of Am., N.A.*, No. 14-cv-2300, 2015 WL 753977, at *4 (N.D. Ill. Feb. 20, 2015) ("Although it is true, as Plaintiff points out, that some of the claims in the federal complaint are asserted against the servicers of the loan (BANA and Everhome Mortgage)—which are not named as parties in the State Foreclosure Action—the Court nonetheless concludes that the actions are sufficiently parallel.").

Significantly, both cases involve nearly identical facts and issues. Both the Foreclosure and this case arise from the same facts—the Property, the Mortgage, the 2024 Loan Modification, and the parties' respective actions thereafter. *See, e.g.*, *Karol v. Old Second Nat'l Bank*, No. 20 C 4344, 2020 WL 6343088, at *3 (N.D. Ill. Oct. 29, 2020) (finding federal action

5

parallel with pending state foreclosure action where "the contract[s] at issue in the two suits are identical and both actions involve the same property, the same mortgage, the same note, the same Change in Terms Agreements, and the same relevant payments"). Both actions also raise many of the same legal issues, including: whether the 2024 Loan Modification is valid, whether Morris defaulted on the Mortgage, and whether the Trustee has a right to foreclose on the Property. *See, e.g.*, *Charles*, 2012 WL 6093903, at *4 ("Because Plaintiffs' federal action relies significantly on the resolution of the primary legal issue under consideration in BoA's state court foreclosure action, the Court finds that the actions are sufficiently parallel to support *Colorado River* abstention.").

Morris does not contest that both cases arise from the same facts. Instead, she argues that the cases are not parallel because they do not raise the same legal issues and request different relief. She maintains that the Foreclosure cannot address whether Shellpoint or DAA made false representations or engaged in unfair practices in violation of the FDCPA or ICFA, or whether Shellpoint violated RESPA's servicing regulations. "Whether the rights and remedies differ in the two suits is beside the point: the key inquiry is not whether the alignment of the claims and remedies in the two cases is the same, but rather whether 'the central legal issues[ ] remain the same in both cases.'" *Loughran v. Wells Fargo Bank, N.A.*, 2 F.4th 640, 649 (7th Cir. 2021) (alteration in original) (quoting *Clark*, 376 F.3d at 687). That is the case here. But even if the Foreclosure "may not necessarily resolve all aspects of [Morris'] claims, it's likely that it will narrow the issues and resolve most, if not all, of the factual questions on which [Morris'] claims are premised." *Nieves*, 2015 WL 753977, at *4. Because the resolution of the Foreclosure could dispose of nearly all of Morris' claims here, the cases are parallel for purposes of the *Colorado River* doctrine. *See, e.g.*, *Karol*, 2020 WL 6343088, at *2 (finding federal action raising RESPA,

6

ICFA, and breach of contract claims was parallel to pending state foreclosure case because the cases "involve extremely closely related legal and factual issues," including whether the mortgagee breached a valid contract and whether the mortgagee had a right to foreclose on the property).

## II.     Whether the *Colorado River* Factors Favor Abstention

Having determined that the state and federal actions are parallel, the Court must weigh the following factors to determine the propriety of abstention: (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the two forums obtained jurisdiction; (5) the source of governing law, state or federal; (6) the adequacy of state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *Baek*, 886 F.3d at 663–64 (citation omitted). The Court has "discretion to apply more significant weight and analysis to those factors that are most relevant to the case at hand." *Freed*, 756 F.3d at 1021. "[B]ecause of the presumption against abstention, absent or neutral factors weigh in favor of exercising jurisdiction." *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 648 (7th Cir. 2011).

A majority of the *Colorado River* factors weigh in favor of abstention. Relevant to the first and fourth factors, the Trustee filed the Foreclosure and thus, the Circuit Court assumed jurisdiction over the Property on November 13, 2024—ten months before Morris filed this lawsuit in September 2025. Morris contends that because she does not assert an interest in any property in this case, the Foreclosure has not assumed jurisdiction over any *relevant* property. The Seventh Circuit has agreed, noting that this factor "is relevant only if there is property at

7

issue in *both* the federal and the state proceedings," and that, where there is not, the "consideration is . . . largely beside the point." *Loughran*, 2 F.4th at 650. So while the first factor is neutral or weighs against abstention, *see id.*, the fourth factor weighs in favor of abstention, *see, e.g.*, *Karol*, 2020 WL 6343088, at *4 ("The Seventh Circuit has held that differences in filing times as short as between five and seventh [sic] months favor abstention.").

Next, both courts are located in Chicago, so the second factor is neutral. *See Kane v. Bank of Am., Nat'l Ass'n*, No. 13 C 8053, 2017 WL 2243055, at *3 (N.D. Ill. May 23, 2017) (finding second factor weighed against abstention because both the Circuit Court of Cook County, Illinois and the United States District Court for the Northern District of Illinois "are located in downtown Chicago, within a few blocks of one another," meaning that "neither forum is more convenient than the other"). As for the third factor, "[p]iecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Day v. Union Mines Inc.*, 862 F.2d 652, 659 (7th Cir. 1988) (citation omitted). As explained above, the Foreclosure shares nearly identical facts and issues with this case, meaning the third factor strongly favors abstention. *See, e.g.*, *Loughran v. Wells Fargo Bank, N.A.*, No. 19 C 4023, 2019 WL 6349890, at *4 (N.D. Ill. Nov. 27, 2019) ("The third factor, regarding the desirability of avoiding piecemeal litigation, also weighs in favor of abstention because the foreclosure action will likely dispose of a majority of the factual and legal issues presented in this case."), *aff'd*, 2 F.4th 640; *Nieves*, 2015 WL 753977, at *5 (finding that the third factor weighed in favor of abstention because "[c]oncurrent consideration of this case and the State Foreclosure Action—cases involving the same parties, contracts, documents, and legal issues—. . . presents a significant risk of inconsistent results"). As to the fifth factor—the source of governing law—Morris brings both state and federal claims here, making this factor neutral.

8

Next, the Foreclosure can protect Morris' rights, given that she can raise her RESPA and FDCPA claims as defenses in that case. The statutes that provide the basis for Morris' federal claims (RESPA and the FDCPA) grant concurrent jurisdiction to the state courts, meaning the state court can protect Morris' federal rights as well. *See* 12 U.S.C § 2614; 15 U.S.C. § 1692k(d). Although Morris may complain that the state court struck her affirmative defenses regarding loan modification and similar, the state court did so without prejudice, providing her with the opportunity to amend and provide additional information to support those defenses. Doc. 23-2 at 115. Additionally, as discussed more fully below, the Court is staying, not dismissing, this case, which gives Morris the "possibility to revive [her] federal litigation depending on the outcome in state court or in the unlikely event that the state court action is inadequate." *Freed*, 756 F.3d at 1023. And while Illinois courts have interpreted Illinois mortgage foreclosure law "to preclude all claims of parties to the foreclosure related to the mortgage or the subject property" after entry of a judgment of foreclosure and order confirming a judicial sale, it nonetheless allows a party to raise RESPA and similar claims "between the judgment of foreclosure and the confirmation of the sale." *Adler v. Bayview Loan Servicing, LLC*, 2020 IL App (2d) 191019, ¶ 25; *see also Heuer v. BMO Harris Bank, N.A.*, No. 23 CV 6153, 2024 WL 3791630, at *4 (N.D. Ill. Aug. 13, 2024) (rejecting plaintiff's "concern about the 'permanent implications' of abstention" in light of the fact that Illinois law allows a plaintiff to raise RESPA claims in state court). Accordingly, both the sixth and eighth factors favor abstention. *See, e.g.*, *Karol*, 2020 WL 6343088, at *5 (finding factors six and eight weighed in favor of abstention because "two of the Karols' claims arise under state law and because RESPA grants concurrent jurisdiction to the state court," and thus the court had "no reason to doubt the adequacy" of the state forum); *Nieves*, 2015 WL 753977, at *6 (finding factors six and eight

weighed in favor of abstention because plaintiff could raise his breach of contract, FDCPA, and RESPA claims in state court).

As for the seventh factor, the Foreclosure has proceeded further than this case, with the state court having ruled on the Trustee's motion to strike affirmative defenses shortly after Morris filed this case. Because Morris could not have removed the foreclosure action to federal court as an Illinois citizen sued in Illinois, *see* 28 U.S.C. § 1441(b)(2), the ninth factor "*favors* a stay, because the purpose of this factor is to prevent litigants from circumventing the removal statute." *Loughran*, 2 F.4th at 650. The tenth factor also favors abstention because Morris filed this case after the Foreclosure and appears to seek an alternative forum to air her grievances surrounding her Mortgage and the loan modification process. *See Williams v. Quantum Servicing Corp.*, No. 11 C 9106, 2013 WL 271669, at *4 (N.D. Ill. Jan. 23, 2013) ("The timeline of these cases leads us to believe that this suit is a contrived reaction to the state-court foreclosure proceeding as well as to plaintiffs' setbacks therein."); *cf. Karol*, 2020 WL 6343088, at *5 ("As other courts have recognized, one need not comment adversely on a federal plaintiff's motives to conclude that, because his federal court claims closely track his state-court pleadings, the federal suit is vexatious and contrived within the meaning of *Colorado River*." (citation omitted)).

Becuase a vast majority of the factors weigh in favor of abstention under the *Colorado River* doctrine, the Court finds that exceptional circumstances warrant abstaining and allowing the Foreclosure to move forward.

### III. Stay or Dismissal

Although Shellpoint and DAA ask the Court to dismiss Morris' complaint based on *Colorado River* abstention, the Seventh Circuit has held that "a stay, not a dismissal, is the

appropriate procedural mechanism for a district court to employ in deferring to a parallel state court proceeding under the *Colorado River* doctrine." *Selmon v. Portsmouth Drive Condo. Ass'n*, 89 F.3d 406, 409–10 (7th Cir. 1996) (collecting cases). Thus, the Court exercises its discretion to stay this case pending resolution of the Foreclosure under the *Colorado River* doctrine. *See, e.g., Karol*, 2020 WL 6343088, at *5 (staying federal action pending resolution of parallel state foreclosure case); *Nieves*, 2015 WL 753977, at *7–8 (same); *Charles*, 2012 WL 6093903, at *8 (same). Because the Court has stayed the case, it need not address Shellpoint's arguments regarding the sufficiency of the RESPA claim at this time.

**CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part Shellpoint's and DAA's motions to dismiss [22, 29]. The Court stays this case pending resolution of the Foreclosure. The Court sets a status hearing on July 16, 2026 at 1:30 PM, and directs the parties to file a joint status report by July 9, 2026, indicating the status of the Foreclosure.

Dated: April 15, 2026

SARA L. ELLIS
United States District Judge

11